UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILFREDO CASTILLO RIVAS,

                    Petitioner(s),

    v.

PAMELA BONDI, et al.,

                    Respondent(s).

CASE NO. C26-0134-KKE

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241.  Dkt. No. 5.
Petitioner, a citizen of Venezuela, entered the United States in April 2024, and has been detained
since March 2025.  In July 2025, an immigration judge denied Petitioner's request for asylum,
entered a final order of removal, and granted Petitioner's request for withholding of removal to
Venezuela.  Since then, the Government[1] notified Petitioner of an intent to remove him to Mexico.
After Petitioner claimed fear of persecution there, the Government referred him for a credible fear
interview.  The Government found that Petitioner had failed to show that it was more likely than
not that he would be persecuted in Mexico, and continues to assert that there is a significant
likelihood of removal to Mexico in the reasonably foreseeable future.

---

[1] This order refers to the Federal Respondents—Attorney General of the United States Pamela Bondi, U.S. Department of Homeland Security Secretary Kristi Noem, U.S. Immigration and Customs Enforcement ("ICE"), and ICE's Acting Seattle Field Office Director Laura Hermosillo—generally as "the Government."

1

2

3

4

As Petitioner has now been detained for more than six months since the entry of his final order of removal, he seeks immediate release on bond and requests injunctive relief related to a future removal to Mexico or another third country.  For the following reasons, the Court will grant the petition and grant in part Petitioner's request for related injunctive relief.

## I.    BACKGROUND

Petitioner fled Venezuela in April 2024 seeking asylum in the United States, and was detained upon arrival in the United States and processed for expedited removal.  Dkt. No. 14 ¶ 4–6.  Petitioner claimed fear of removal to Venezuela and was referred for a credible fear interview.  *Id*. ¶ 6.  Petitioner's fear was found to be credible, and he was released and enrolled in an Alternative to Detention ("ATD") program.  *Id.* ¶¶ 6–7.  The Government placed Petitioner in immigration court proceedings.  *Id.* ¶ 9.  Petitioner was re-detained in March 2025, due to alleged ATD violations, and through counsel requested a bond hearing.  *Id.* ¶¶ 19–21.  On the date of his bond hearing, his counsel withdrew the bond hearing request and a merits hearing was scheduled for July 2025.  *Id*. ¶ 21.  On the date of the merits hearing, Petitioner's counsel withdrew representation altogether.[2]  *Id*. ¶ 22.  Petitioner represented himself at the hearing and testified to the sexual assault he suffered at the hands of Venezuelan officials.  Dkt. No. 5 at 7.  The immigration judge denied Petitioner's request for asylum, but also granted his petition for withholding of removal to Venezuela under the Convention Against Torture.  Dkt. No. 5-1.

On December 12, 2025, the Government notified Petitioner that they intend to remove him to Mexico.  Dkt. No. 14 ¶ 23.  Petitioner refused to sign the notice and claimed a fear of Mexico.  *Id*.  On January 5, 2026, Petitioner had a credible fear interview, and the Government found that

---

[2] Petitioner avers that his lawyer stopped communicating with him, refused to return the $2,000 Petitioner had paid him, and then withdrew.  Dkt. No. 5 at 7.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

1    Petitioner did not establish that it is more likely than not that he would be persecuted in Mexico.

2    *Id.* ¶ 24.

3        On January 14, 2026, Petitioner filed a petition for writ of habeas corpus.  Dkt. Nos. 1, 5.

4    On that date, Petitioner also filed an emergency motion to prevent his transfer from the jurisdiction

5    of this Court while his petition is pending, and the Court provisionally granted that motion.  Dkt.

6    Nos. 3, 8.

7        The petition is now fully briefed and ripe for resolution.  For the following reasons, the

8    Court will grant the petition.

9                    **II.  ANALYSIS**

10   **A.    Legal Standards**

11       *1.  Habeas Jurisdiction*

12       To succeed on a habeas petition, a petitioner must show he "is in custody in violation of

13   the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241.  "The essence of

14   habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the

15   traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*,

16   411 U.S. 475, 484 (1973).   A district court's habeas jurisdiction includes challenges to

17   immigration-related detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v.*

18   *Kim*, 538 U.S. 510, 517 (2003).

19       *2.  Legal Framework Governing Detention of Non-Citizens Subject to an Order of*
         *Removal*

20       Detention of noncitizens following an order of removal is governed by the INA.  "When

21   [a noncitizen] has been found to be unlawfully present in the United States and a final order of

22   removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a

23   subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held

24

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 3

in custody." *Zadvydas*, 533 U.S. at 682. During the 90-day removal period, the Government "shall detain" the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Once the 90-day removal period ends, the Government may continue to detain certain noncitizens. *Id.* § 1231(a)(6). "[A noncitizen] ordered removed who is inadmissible …, removable[,] … or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" *Id.*

Federal regulations govern the re-detention and revocation of supervised release of a noncitizen with a final order of removal. 8 C.F.R. § 241.13(a). Under 8 C.F.R. § 241.13(i), ICE may revoke a noncitizen's release if (1) if they violate the conditions of their release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen will be removed in the reasonably foreseeable future.

However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

In challenging detention through a habeas petition, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Once that showing is made, the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

1

**B.    Petitioner's Continued Detention Is Unlawful.**

2

Petitioner is entitled to the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at

3

693. Having been detained for more than six months, Petitioner's detention is not "presumptively

4

reasonable." *Id.* at 701. Petitioner has met his burden to show that there is no significant likelihood

5

of removal in the reasonably foreseeable future because he may not be removed to Venezuela, and

6

no third country has agreed to accept him. Although the Government notified Petitioner of an

7

intent to remove him to Mexico, there is no evidence that Mexico (or any other country) is willing

8

to accept Petitioner under 8 U.S.C. § 1231(b)(2)(E). Indeed, the Government submits no evidence

9

that it has even asked the government of Mexico to accept him or that any travel documents have

10

been requested or obtained for his removal to Mexico. And Petitioner submitted evidence that

11

Mexico's acceptance of him may be contingent upon his willing consent to go to Mexico, and that

12

without that consent, removal to Mexico cannot be effectuated. *See* Dkt. Nos. 3-3, 3-4, 3-6, 3-7,

13

3-8. Under these circumstances, Petitioner has satisfied his burden. *See, e.g.*, *Elshourbagy v.*

14

*Bondi*, No. 2:25-cv-02432-TL, 2025 WL 3718993, at *4 (W.D. Wash. Dec. 23, 2025).

15

The burden now shifts to the Government to respond with evidence sufficient to rebut

16

Petitioner's showing. *Zadvydas*, 533 U.S. at 701. A deportation officer states that ICE believes it

17

will be able to eventually remove Petitioner to Mexico because "Mexico has been accepting

18

Venezuelan citizens" (Dkt. No. 14 ¶ 25), but a representation that good-faith efforts to effectuate

19

removal continue is insufficient to rebut Petitioner's showing. *See Zadvydas*, 533 U.S. at 702;

20

*Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have

21

regularly refused to find Respondents' burden met where Respondents have offered little more

22

than generalizations regarding the likelihood that removal will occur."). More specifically, the

23

Government's representation fails to respond to Petitioner's evidence regarding unsuccessful

24

removals to Mexico where noncitizens refuse to enter Mexico willingly; whatever the Government

1

2

may believe about Mexico's willingness to accept Venezuelans in general does not address whether, as Petitioner's evidence indicates, Mexico will not accept Venezuelans against their will.

3

4

5

6

Accordingly, the Court finds that the Government has not met its burden to rebut Petitioner's evidence. Because Petitioner is entitled to habeas relief under *Zadvydas*, the Court will therefore grant his habeas petition and order his immediate release on bond, subject to the supervision conditions the Government previously imposed.

7

**C.     The Court Will Grant in Part Petitioner's Requests for Injunctive Relief.**

8

9

10

11

12

13

Petitioner seeks not only his release from detention but also injunctive relief related to his potential removal to a third country under the Fifth Amendment to the United States Constitution, 8 U.S.C. § 1231, the Convention Against Torture, implementing regulations of the Immigration and Nationality Act, and the Administrative Procedure Act ("APA"). *See* Dkt. No. 5 at 26–27. The Government contends that because ICE is lawfully pursuing Petitioner's removal to third countries, Petitioner's request to limit ICE from doing so should be denied. Dkt. No. 13 at 9.

14

15

The Court will grant some of Petitioner's requested injunctive relief, after addressing its jurisdiction to hear Petitioner's claims.

16

*1.      Petitioner's Membership in the D.V.D. Class Does Not Deprive the Court of Jurisdiction.*

17

18

19

20

21

22

23

24

The Government argues that the Court "should decline to exercise jurisdiction over Petitioner's third country removal claim as a matter of comity" because he is a member of the certified plaintiff class in *D.V.D v. Department of Homeland Security*, Civ. A. No. 25-10676 (D. Mass.). Dkt. No. 13 at 13. For support, it relies on *Pride v. Correa*, in which the Ninth Circuit held that, when "the complainant is a member in a class action seeking the same relief[,]" a court "may dismiss those portions of the complaint which duplicate the class action's allegations and prayer for relief." 719 F.3d 1130, 1133 (9th Cir. 2013) (citation modified) (quoting *Crawford v.*

*Bell*, 599 F.2d 890, 892–93 (9th Cir. 1979)).  But the Ninth Circuit went on to explain that "a district court may not 'dismiss[] those allegations … which go beyond the allegations and relief prayed for in [the class action]." *Id.* (first and last alterations in original) (quoting *Crawford*, 599 F.2d at 893).  Here, dismissal would be inappropriate because Petitioner's individual claims seek relief he is unable or unlikely to obtain in the *D.V.D.* litigation.

Petitioner's due process claim is not identical to the claims in the *D.V.D.* class action because he seeks a meaningful opportunity to seek withholding of removal in the event he fears persecution in a designated third country—a claim not at issue in *D.V.D.*  *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 729–30 (W.D. Wash. 2025); *see also Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *7 (W.D. Wash. Nov. 17, 2025); *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *6 (W.D. Wash. Dec. 19, 2025).

And as the Government acknowledges, dismissal of individual claims that duplicate a class action is not required, rather, it is "within the court's discretion" and grounded in "its inherent power to control its own docket."  Dkt. No. 13 at 13 (citing *Crawford*, 599 F.2d at 893).  As the Ninth Circuit explained in *Crawford*, "[a] court *may choose* not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result." 599 F.2d at 893.  Here, ample authority supports the Court's exercise of jurisdiction over Petitioner's third-country removal claims.

Finally, the Government contends that Petitioner's petition should be dismissed because "[t]he Supreme Court's stay of the preliminary injunction" in *D.V.D.* is "precedent and … binding" on Petitioner as a member of the *D.V.D.* class.  Dkt. No. 13 at 13.  For the reasons thoroughly explained in *Nguyen*, and numerous other cases from this district and Circuit, the Court disagrees. *See* 796 F. Supp. 3d at 730–33; *see also Kumar*, 2025 WL 3204724, at *8 (adopting *Nguyen*'s reasoning); *Arenado-Borges*, 2025 WL 3687518, at *6 (same).

1

2

In sum, Petitioner's membership in the *D.V.D.* class does not deprive the Court of jurisdiction to adjudicate his claims for individual relief in this habeas action.

3

4

    2.    *The Court Need Not Determine Whether Review Solely Under the APA Is Available.*

The Government argues that although Petitioner references the APA as a legal basis for his challenge to removal to a third country, the APA does not apply because Petitioner has other adequate statutory remedies, namely habeas. Dkt. No. 13 at 11–12. Federal courts have rejected this argument, finding that "APA and habeas review may coexist." *Bautista v. Santacruz*, __ F. Supp. 3d __, 2025 WL 3713987, at *14 (C.D. Cal. Dec. 18, 2025) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 185 (D.D.C. 2015)).

5

6

7

8

9

Moreover, this case is unlike *Trump v. J.G.G.*, which is cited by the Government, where petitioners challenged removal solely under the APA, having dismissed habeas claims. 604 U.S. 670, 671, 674 (2025). Here, Petitioner argues that his removal to a third country would violate not only the APA but also the Fifth Amendment, the Convention Against Torture, and 8 U.S.C. § 1231. *See* Dkt. No. 5 at 26. Accordingly, the Court need not determine whether he would be entitled to relief solely under the APA.

10

11

12

13

14

15

    3.    *The Court Will Grant Some of Petitioner's Requests for Injunctive Relief.*

Petitioner also seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event the Government attempts to remove him to a third country, or if the Government re-detains him. Dkt. No. 5 at 29–30. Specifically, he requests an order enjoining the Government from removing him to a third country without certain procedural safeguards, or from re-detaining him without first holding a hearing before a neutral decisionmaker. *Id*. He also requests an order enjoining the Government from removing him to *any* third country because the

16

17

18

19

20

21

22

23

24

1  Government's third-country removal policy seeks to impose unconstitutional punishment on its

2  subjects, including imprisonment and other forms of harm.  *Id.* at 30.

3      Because he invoked its habeas and federal question jurisdiction, the Court could provide

4  equitable relief on those claims if Petitioner met the standard for a permanent injunction.  *See* Dkt.

5  No. 5 at 4; *see Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020).   Thus, the Court turns to

6  consider the availability of the relief Petitioner requests.

7          a.    The Government Must Comply With Federal Regulations if
                 Petitioner Is Re-Detained.

8

9      Petitioner asserts that he is entitled to a hearing in advance of any future re-detention.  Dkt.

   No. 5 at 29.

10

11     The re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R.

12 § 241.13.  The regulation was "intended to 'provide due process protections to [noncitizens]

13 following the removal period as they are considered for continued detention, release, and then

   possible revocation of release[.]'"  *Constantinovici v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2898985,

14 at *5 (S.D. Cal. Oct. 10, 2025) (quoting *Santamaria Orellana v. Baker*, CV 25-1788-TDC, 2025

15 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).  The regulation states, in part, that "[t]he Service

16 may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on

17 account of changed circumstances, the Service determines that there is a significant likelihood that

18 the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13.  The

19 regulation also provides that, "[u]pon revocation [of an order of supervision], the [noncitizen] will

20 be notified of the reasons for revocation of his or her release," and that there will be "an initial

21 informal interview promptly after his or her return to Service custody to afford the [noncitizen] an

22 opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. §

23 241.13(i)(3).

24

1

2

Here, the Government argues that the Court should not prescribe any additional re-

detention procedures at this time, when Petitioner's future release has not yet been revoked. Dkt.

3

No. 13 at 14–15. Because it does not appear to be disputed that any re-detention must comply

4

with the procedures set forth in 8 C.F.R. § 241.13, the Court finds it appropriate to order at this

5

time that if Petitioner is re-detained after he is released consistent with this order, the Government

6

must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i).

7

                b.     <u>The Government Must Comply With the Law In Seeking Petitioner's Removal to a Third Country.</u>

8

9

Petitioner also requests an order enjoining the Government from removing him to a third

10

country without notice and a meaningful opportunity to be heard in reopened removal proceedings.

11

Dkt. No. 5 at 30. The Government notes that Petitioner has not previously sought reopening of

12

his immigration proceedings, but does not explicitly oppose this request. *See* Dkt. No. 13 at 9.

The Court will grant Petitioner's request.

13

Where the Government cannot remove a noncitizen to the country specified in their

14

removal order, it may attempt to remove that person to a third country, but in doing so, it must

15

comply both with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. *Aden v. Nielsen*, 409

16

F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar*, 2025 WL 3204724, at *2 (explaining such

17

designations "are subject to the same mandatory protections that exist in removal proceedings.").

18

To comply with due process, the Government must provide sufficient notice and a meaningful

19

opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to

20

a designated third country. *Id.* The INA prohibits ICE from removing a noncitizen to any country

21

where their "life or freedom would be threatened … because of [their] race, religion, nationality,

22

membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The

23

Government must "make a determination regarding a noncitizen's claim of fear before deporting

24

1   him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A).  Multiple courts in this district

2   have held that, if a noncitizen claims fear of removal to a designated third country, the Government

3   must allow them to pursue withholding of removal through reopened removal proceedings before

4   an immigration judge. *Nguyen*, 796 F. Supp. 3d at 739; *Aden*, 409 F. Supp. 3d at 1011; *Baltodano*

5   *v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *3–4 (W.D. Wash. Oct. 23, 2025).

6       Consistent with *Aden*, the Court will grant Petitioner's request requiring that the

7   Government may not remove or seek to remove Petitioner without notice of the intent to do so and

8   a meaningful opportunity to respond in reopened removal proceedings before an immigration

9   judge under 8 U.S.C. § 1231(b)(3).  *Nguyen,* 796 F. Supp. 3d at 727 ("'[B]oth the due process

10  clause and the governing statute place the burden on the government—regardless of whether the

11  country of deportation is designated during or after the removal hearing—to provide a meaningful

12  opportunity to be heard on asylum and withholding claims.' This cannot be satisfied by simply

13  allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal

14  proceedings must be reopened so that a hearing can be held.") (quoting *Aden*, 409 F. Supp. 3d at

15  1010–1011)).

16          c.    The Court Denies Petitioner's Request for an Order Enjoining
                  Removal to Any Third Country.

17

18      Petitioner argues that ICE's third-country removal policy is unconstitutionally punitive

19  because it violates his Fifth and Eighth Amendment rights, and he seeks to enjoin the Government

    from removing him to any third country on that basis.  Dkt. No. 5 at 30.

20

21      As a threshold matter, numerous courts, including this one, have held the Government's

22  third-country removal policy is unconstitutional.  *See, e.g.*, *Kumar*, 2025 WL 3204724, at *6;

23  *Nguyen*, 796 F. Supp. 3d at 735 (collecting cases).  The Government does not address this growing

24  body of legal authority nor does it dispute the underlying factual allegations supporting it.  Instead,

the Government argues only that this relief duplicates Petitioner's request that the Court order the Government to comply with due process in future efforts to effectuate Petitioner's removal to a third country. Dkt. No. 13 at 14.

Although the Court stands by its prior conclusion (unrebutted here) that the Government's third-country removal policy violates due process, it nonetheless denies Petitioner's request for a broad permanent injunction against *any* third-country removal. This order requires the Government to provide Petitioner with due process in effectuating any future third-country removal. As such, on this record, it is not clear to the Court that additional injunctive relief is necessary to prevent irreparable injury at this time. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (discussing standard for permanent injunctive relief); *cf. Kumar*, 2025 WL 3204724, at *9 (enjoining third-country removal where petitioner was issued a notice that ICE intended to remove him to a third country where he would likely face persecution).

## III. CONCLUSION

The Court GRANTS Petitioner's habeas petition. Dkt. No. 5. Petitioner's motion for emergency relief is denied as MOOT. Dkt. No. 3.

1. The Government is ORDERED to immediately release Petitioner from custody on bond under the conditions of supervision previously imposed. Any future re-detention must comply with 8 C.F.R. § 241.13(i).

2. The Court further ORDERS that if the Government continues to pursue removal of Petitioner to a third country, they must provide him with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

3.  No later than February 6, 2026, the Government shall file a declaration confirming that
    Petitioner has been released from custody.

    Dated this 4th day of February, 2026.

                                        _____
                                        Kymberly K. Evanson
                                        United States District Judge

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 13